## HUMBLE OIL & REFINING COMPANY *v.*
## DEPARTMENT OF REVENUE

John R. Hay, Davies, Biggs, Strayer and Stohl,

Portland, and Rex J. Spivey, Tax Department, Humble Oil & Refining Company, Houston, Texas, represented plaintiff.

Theodore W. de Looze, Chief Counsel, Department of Revenue, Salem, represented defendant.

Decision for defendant rendered January 13, 1971.

LOREN D. HICKS, Judge pro tempore.

This case is brought by a foreign corporation which is engaged throughout the United States in the production, manufacturing and marketing of petroleum products. The issue is whether the corporation should be required to report its income in Oregon for the years 1960 through 1963 by apportionment on a unitary basis as ordered by the Department of Revenue. The plaintiff contends that it is not engaged in a unitary business in Oregon and that even if its business is unitary, its income in Oregon should be reported on the segregated method rather than the apportionment method, and that, at most, only the marketing part of its operations should be apportioned. Plaintiff argues that its activity in Oregon was limited to marketing and was not dependent upon and did not contribute to any of its activities, particularly production, in other states and that therefore use of the apportionment method taxes a profit earned elsewhere. Plaintiff emphasizes that it produced no oil in Oregon. On the other hand, defendant contends that plaintiff's operations in Oregon are not separate; that plaintiff has an integrated unitary operation; and that all of its nationwide oil business income should be apportioned for income tax reporting to Oregon.

The facts are not in dispute. The taxpayer, Humble Oil & Refining Company, a Delaware corporation, was created in 1959 from Carter Oil Company of

Tulsa, Oklahoma, which was doing business in Oregon, and a prior Humble Oil & Refining Company and Esso Standard Oil Company. The taxpayer is a wholly owned subsidiary of Standard Oil Company of New Jersey, and conducts practically all phases of its parent's business in the United States. It is organized into regional geographical divisions with Oregon being in the central region which is headquartered in Tulsa, Oklahoma. Credit cards are used by Humble on a national basis. The taxpayer's marketing department has nationwide jurisdiction and is headed by a vice-president and director located in Houston, Texas. Its advertising program is on a nationwide basis under an officer located in Houston, with advertising departments in each of the regional divisions. Accounting and legal departments are also in Houston, with the work spread out in regional offices. The taxpayer is engaged throughout the United States in the exploration for and production of crude oil and natural gas, and in the manufacture, refining, transportation and marketing of oil, natural gas and other petroleum products and automotive accessories. Within Oregon itself during the years in question the taxpayer's activity was almost exclusively the marketing of refined petroleum products and automotive accessories. It had no manufacturing or refining facilities in Oregon nor any sales of crude oil or natural gas here. Although it engaged in exploration for crude oil in Oregon during those years, there was no production.

All of the refined petroleum products and related automotive accessories sold in Humble's service stations in Oregon were acquired by purchase from third-party suppliers, with the exception of oils and greases, which were supplied centrally by the taxpayer from

its plants and refineries throughout the United States. These centrally supplied items amounted to about five percent in value of the total products marketed in Oregon. Acquisition of products by purchase and exchange from third parties is a usual and customary practice with Humble and others in the petroleum industry and is done for economic considerations, such as cost, transportation and convenience.

During the tax years in question Humble maintained separate books of account for the Oregon operations, which books showed a net operating loss. Prior to the 1959 merger, Carter Oil Company had reported its Oregon income on the unitary basis, including all marketing operations, together with production and manufacturing in Montana and Wyoming. Following the merger Humble reported its Oregon income for each year in question by this same method, apportioning by formula its marketing throughout the United States and production and refining in Montana and Wyoming.

The controlling provisions of the tax statutes in force during the time in question were found in ORS 314.280, which provided as follows:

"(1) If the gross income of a corporation or a nonresident individual is derived from business done both within and without the state, the determination of net income shall be based upon the business done within the state, and the commission shall have power to permit or require either the segregated method of reporting or the apportionment method of reporting, under rules and regulations adopted by the commission, so as fairly and accurately to reflect the net income of the business done within the state.

"(2) The provisions of subsection (1) of this

section dealing with the apportionment of income earned from sources both within and without the State of Oregon are designed to allocate to the State of Oregon on a fair and equitable basis a proportion of such income earned from sources both within and without the state. Any taxpayer may submit an alternative basis of apportionment with respect to his own income and explain that basis in full in his return. If approved by the commission that method will be accepted as the basis of allocation."

The plaintiff maintains that its interpretation of ORS 314.280 for segregated reporting of its income falls squarely within the ruling in *Utah Construction & Mining Co. v. Tax Com.*, 255 Or 228, 465 P2d 712 (1969), *affirming* 3 OTR 385 (1969). The dispute in that case concerned the determination of whether Utah Construction Co., a multistate corporation, should report its Oregon income by the segregated or apportionment method. The Tax Commission contended that the company was unitary and that therefore use of the apportionment method of accounting was "preferable if not mandatory."

Utah Construction Company was engaged in the heavy construction business, building such projects as power plants, industrial plants, railroads and dams. It had three divisions: construction, mining and land development, which were administratively and operationally separate. Each division had a senior vice-president in charge who was virtually autonomous in the operation of his division. The company had central accounting, legal and purchasing offices which served all three divisions to a limited extent. During 1962 to 1965 the company constructed Round Butte Dam on the Deschutes River. This was its only significant business activity in Oregon during those

years. The project was supervised by a project manager; most of the labor was recruited at the jobsite; the entire payroll was handled there; and a complete set of separate accounting records was maintained. Any expense incurred outside Oregon was not charged against the project. Equipment was ordered by the project manager and was specially purchased for the project or was transferred from an equipment pool. Almost all of the equipment used was disposed of upon completion of the dam. The company sustained a loss on the job each year and its loss for the three tax years totaled $2,194,110 without any charges for general and administrative expense or for use or depreciation of equipment.

The Tax Court held that by ORS 314.280 the Oregon legislature had directed that where a corporation derives gross income from both within and without the state, whether the segregated or apportionment method of accounting shall be used depends upon which method will most fairly and accurately reflect the net income of the taxpayer within the state. The court pointed out that the method to be used depended upon the circumstances involved in each case and that no one method was endorsed over another. The Tax Court concluded that segregated reporting was called for because Utah Construction Co. had only the one separate construction project in Oregon; the project was not related to its other activities elsewhere; and the large loss in Oregon was without any charges for the general and administrative expenses of either the construction division or the home office.

In its opinion affirming the Tax Court, the Oregon Supreme Court held that regardless of whether the taxpayer was unitary or not, use of the appor-

tionment method to allocate income was not mandatory. The court stated that it was apparent from the facts that the company did not earn a net income in Oregon and that the only method of accounting that would "fairly and accurately" reflect the net income of the business done in Oregon was the segregated method.

Although the law of *Utah Construction* is applicable in this case, the circumstances are not, and therefore its decision for separate accounting is not controlling here. The facts of the two cases and the character of the two plaintiffs and of the two industries are not similar. That a certain method of tax reporting is fair, accurate and lawful for Utah Construction Company is not precedent that it is fair, accurate and lawful for Humble Oil & Refining Company. The construction by a heavy construction company of a single, independent large multipurpose dam as a completely separate undertaking from all other projects is not comparable to the multistate operations of a major oil company in the production, refining and manufacturing of petroleum products and the marketing of petroleum products at wholesale and through a large number of retail service stations throughout the several states. Also, evidence in *Utah Construction* showed that the company's operations in other states were fully reported and taxed there without any deductions for the large loss in Oregon. It was obvious that Utah Construction Company had suffered a net loss in Oregon completely independent from its out-of-state operations and therefore it would have been unfair and inaccurate to force the company to declare a net profit here.

The utilization of the apportionment method of tax reporting by corporations engaged in multistate bus-

iness is a recognized concept in the United States, and has been advocated by Oregon's state tax authorities for many years. It is the defendant's position that in the case of a vertically integrated multistate corporation the unitary concept of reporting income for taxation on a formula of property, wages and sales is more realistic and fair than segregated accounting.[1] Defendant argues that over a period of time apportionment will give a much needed uniformity and will average out any discrepancies.

■ As held in *Utah Construction, supra,* however, Oregon law does not favor one method over another, but requires use of the method which under the cir-

[1] Reg 314.280(1)-(B) of the Department of Revenue in 1963 provided:

"If the business of the taxpayer is carried on both within and without this state, and the income properly attributable to Oregon may be fairly reflected only by treating the business within and without the state as a unitary business, the apportionment method must be used. The term 'unitary business' means that the taxpayer to which it is applied is carrying on a business, the component parts of which are too closely connected and necessary to each other to justify division or separate consideration as independent units. Where Oregon activities are a part of a unitary business carried on within and without the state, the portion of the unitary income subject to tax in Oregon will be determined by the apportionment method. Where the activities carried on within the state are separate from the activities carried on outside of the state, the income subject to tax may be determined upon a separate accounting of the Oregon activities. Basically, if the operation of a business within Oregon is dependent on or contributes to the operation of the business outside the state, the entire operation is unitary in character, and the income from Oregon activities will be determined by the apportionment method. In all cases where the business is unitary, some type of an apportionment formula will generally be employed, not separate accounting. * * *

"* * * * *

"*Apportionment Factors.* After deducting the nonapportionable income, the remainder will ordinarily be apportioned to this state by giving equal weight to three factors, i.e., 'property,' 'wages,' and 'sales.' "

cumstances most fairly and accurately reflects the net income of the taxpayer reasonably attributable to this state. Circumstances which usually call for the application of apportionment of income of a multistate business are unity of ownership, unity of management and unity of operation and when business in-state depends upon or contributes to business out of state.

Humble Oil & Refining Company is a large vertically integrated corporation engaged nationwide in all phases of the petroleum industry, from discovery through production and manufacture to marketing. It has unity of ownership, operations, management, control and products; and strong centralized credit, purchasing, advertising, accounting and legal services. All segments of plaintiff's business have a great deal in common and contribute to and are dependent upon each other. The plaintiff is actually a single interrelated unitary business operation. The component parts, including those in Oregon, are too closely connected and necessary to each other to be considered as independent units.

Producing in one state and selling in another depends upon a multitude of interdependent operations, and although the petroleum Humble sold in Oregon was not its own production but that of a third party, the sales nevertheless were made possible by the company's own production. If plaintiff wasn't producing it wouldn't be selling, and what plaintiff did in Oregon was not due solely to conditions here, but was dependent upon the market elsewhere and upon plaintiff's production and manufacturing elsewhere. The marketing in Oregon was an integrated part of plaintiff's nationwide business and undoubtedly was bene-

ficial to the corporation as a whole. It was not a completely separate, independent or local endeavor. Plaintiff's production and refining conform to the demands of the nationwide market, and the court believes plaintiff expanded into Oregon to increase demand for its products so that it could increase production and refining and thus increase profits and its stature in the industry.

There certainly was more to plaintiff's decision to operate service stations in Oregon than the mere hope the stations might show a profit. The purpose of marketing here was to increase over-all marketing strength for the benefit of all phases of plaintiff's business. Costs incurred here led to profits elsewhere, and the primary measure of success of Oregon activities was not the profit or loss shown on the income statements of the local service stations, but rather it was the contribution the stations made to plaintiff's over-all operations and growth that really counted. The plaintiff bought its Oregon inventory of gasoline from third parties because it was more economical to do so, and whether an outlet sold Humble production or that of another company was a central management decision based on over-all economic considerations. Each activity of the company was carried on in whatever locality was most economically feasible. Plaintiff was so organized and vertically integrated that its separate parts, geographical and structural, could not be fairly considered by themselves.

Because of the circumstances related above, it is the conclusion of the court that the best method by which to fairly and accurately reflect the net income of the plaintiff's business in Oregon for the years in question is the apportionment method.

■ Plaintiff has also claimed that if it is required to apportion its net income in Oregon, this state will be levying a tax on income earned elsewhere in violation of the due process clause of the Fourteenth Amendment to the United States Constitution. Statutory apportionment by formula of the combined net income of a multistate corporation whose marketing operations in Oregon lost money when income and expenses were calculated under a separate accounting method is not a violation of due process under the Fourteenth Amendment when such apportionment fairly and accurately reflects the net income of the business done within the state. *Butler Bros. v. McColgan*, 315 US 501, 62 S Ct 701, 86 L Ed 991 (1942). Such an apportionment taxes only income which is reasonably attributable to Oregon and therefore is not a tax on extraterritorial profits.

■ ORS 314.280 calls for a fair and accurate determination of net income in Oregon, based upon business done within the state, by either segregated reporting or by apportionment of income from both within and without the state. This provision meets the standards of due process, and when the statute is properly applied there is no violation of the Constitution. Under the state of the record in this case there was no showing that defendant's selection of the apportionment method of reporting resulted in the State of Oregon taxing out-of-state earnings. The court is convinced to the contrary.

■ A taxpayer who attacks the state's apportionment of income for tax purposes bears a heavy burden of proof. He must show by clear and convincing evidence that apportionment is unfair and inaccurate. *Butler Bros. v. McColgan, supra*; *Utah Construction*

*& Mining Co. v. Tax Com., supra.* It is the finding of the court that the plaintiff has not met that burden.

The order of the defendant Department of Revenue is affirmed.