**DISTRICT OF COLUMBIA, Appellant,**

v.

**PIERCE ASSOCIATES, INC., Appellee.**

No. 80–1102.

District of Columbia Court of Appeals.

Re-argued March 25, 1983.

Decided June 16, 1983.

Richard G. Amato, Asst. Corp. Counsel, Washington, D.C., with whom Judith W. Rogers, Corp. Counsel, Charles L. Reischel and James E. Lemert, Deputy Corp. Counsels, and Richard L. Aguglia, Asst. Corp. Counsel, Washington, D.C., were on the brief, for appellant.

Jack Rephan, Washington, D.C., for appellee.

Joel M. Greene, Tumwater, Wash., for amicus curiae, Multistate Tax Com'n.

Before NEBEKER, MACK, and FERREN, Associate Judges.

FERREN, Associate Judge:

In this case, we originally held, in Part III of our opinion, that the District of Columbia erred in apportioning and taxing, as business income, the insurance proceeds that the taxpayer received for flood damage to its Virginia manufacturing facility. *District of Columbia v. Pierce Associates, Inc.*, 440 A.2d 325, 330–31 (D.C.1981). On that issue alone, the District petitioned for rehearing. After consideration of the petition, the taxpayer's answer, and the submissions of the *amicus curiae* (the Multistate Tax Commission), and after reargument, we conclude that the District's interpretation of the statute is correct. Accordingly, we grant the District's petition for rehearing, hold that the insurance proceeds are business income, and substitute the following for Parts III and IV of our previous opinion.

The District of Columbia and thirty-five states have adopted the Uniform Division of Income for Tax Purposes Act (UDITPA). UDITPA, also referred to as the Multistate Tax Compact, generally divides income into two types: business income and non-business income. D.C.Code § 47–441 Art. IV(1)(a), (e) (1982 Supp.).[1] Business income is apportioned among taxing jurisdictions according to a three factor formula, *id.* § 47–441 Art. IV(9); *Pierce, supra,* 440 A.2d at 327–29. Non-business income is allocated to the situs of the income producing property. *See* 9 D.C.M.R. § 125 (1982). The taxpayer here received insurance payments when its manufacturing plant in Virginia was damaged by a flood.[2] If these payments are business income, the District may tax them (as properly apportioned); but if they constitute non-business income, they cannot be taxed here.

The District Department of Finance and Revenue interprets the statutory definition of business income to include the insurance payments. "[A]n agency's interpretation of a statute should be followed when it 'is reasonable and does not contravene the language or legislative history of the statute.'" *District of Columbia v. Catholic University of America,* 397 A.2d 915, 919 (D.C.1979) (citations omitted). Our task, therefore, is to determine whether the District's interpretation satisfies this test.

Section 47–441 Art. IV(1)(a) provides two tests by which income can be classified as business income. "Business income [i] means income arising from transactions and activity in the regular course of the taxpayer's trade or business and [ii] includes income from tangible and intangible property if the acquisition, management, and disposition of the property constitute integral parts of the taxpayer's regular trade or business operations."

The first clause sets out a "transactional" test; *i.e.,* income will be classified as business income if it is attributable to a type of business transaction in which the taxpayer regularly engages. *Tipperary Corp. v. New Mexico Bureau of Revenue,* 93 N.M. 22, 25, 595 P.2d 1212, 1215 (Ct.App.1979) (gain

---

1. This codification substantially reflects the regulations originally contained in 16 D.C.R.R. § 309.5 (1970), now at 9 D.C.M.R. § 9901.1 (1982).

2. Taxpayer is a mechanical contractor in the business of furnishing and installing plumbing, heating, air conditioning, and ventilation systems in the metropolitan area. It also owns a manufacturing plant where it produces sheetmetal ducts, automatic sprinklers, and other specialties for use in its contracting business. *Pierce, supra,* 440 A.2d at 326.

from sale of coal leases resulted in business income because taxpayer engaged in business of exploration and development of oil, gas, and minerals); *see Sperry and Hutchinson Co. v. Department of Revenue,* 270 Or. 329, 332–3, 527 P.2d 729, 731 (1974); *Champion International Corp. v. Bureau of Revenue,* 88 N.M. 411, 414–15, 540 P.2d 1300, 1303–04 (Ct.App.1975). Under this test, "[t]he crucial inquiries are the frequency and regularity of the activity." *Atlantic Richfield Co. v. State,* 198 Colo. 413, 417, 601 P.2d 628, 631 (1979) (en banc) (citations omitted).

The second clause, sometimes characterized as a "functional test," includes as business income all income from tangible and intangible property if it results from a transaction that is an "integral part[ ] of the taxpayer's regular trade or business operations." This means that "all gain from the disposition of the property is considered business income if the property disposed of was used by the taxpayer in its regular trade or business operations. Under this test, the extraordinary nature or the infrequency of the transactions is irrelevant." *Atlantic Richfield Co., supra,* 198 Colo. at 417, 601 P.2d at 631 (dictum) (citations omitted); *accord Times Mirror Co. v. Franchise Tax Board,* 102 Cal.App.3d 872, 162 Cal.Rptr. 630 (1980).

We originally perceived the definition of "business income" as a unitary transactional test, requiring that every transaction, taxable as such, must itself be in the regular course of the trade or business. *See*

*Pierce, supra,* 440 A.2d at 330–31. Under this reasoning, we said that the receipt of insurance payments for the casualty loss of the plant (which we analogized to a forced sale) was not business income because the taxpayer was not in the business of selling, acquiring, or managing commercial real estate. *Id.*

■■■ We are now persuaded that the District's interpretation of the statute is correct. The second clause of UDITPA's business income definition provides an alternative, "functional" test. We conclude the District reasonably may decide that "the acquisition, management, and disposition of[ ] property constitute[s] an integral part[ ] of the taxpayer's regular trade or business," D.C.Code § 47–441 Art. IV(1)(a), if—however sporadically—it arises out of normal business operations.[3] If the property had an integral function in the taxpayer's unitary business,[4] its income properly can be apportioned and taxed as business income, even though the transaction itself does not reflect the taxpayer's normal trade or business. *See Qualls v. Montgomery Ward & Co.,* 266 Ark. 207, 221–22, 585 S.W.2d 18, 26 (1979) (under UDITPA, taxable business transactions "are not required to be in the course of [taxpayer's] regular trade. It is only required that the transactions be in the 'regular course of the taxpayer's trade or business operations.'" (citations omitted)); *Times Mirror Co., supra,* 102 Cal.App.3d at 877, 162 Cal.Rptr. at 633 (under UDITPA, inquiry is whether income arises in main course of taxpayer's busi-

---

**3.** The Supreme Court has defined the outer limits of income that the state may apportion and tax consistently with the Due Process Clause of the Constitution, as "corporate income that is 'reasonably related to the activities conducted within the taxing state.' In order to exclude certain income from the apportionment formula [on constitutional grounds], the company must prove that 'the income was earned in the course of activities unrelated to [taxpayer's business in the state].' The court looks to the 'underlying economic realities of a unitary business,' and the income must derive from 'unrelated business activity' which constitutes a 'discrete business enterprise.'" *Exxon Corp. v. Wisconsin Dep't of Revenue,* 447 U.S.

207, 223–24, 100 S.Ct. 2109, 2120, 65 L.Ed.2d 66 (1980) (citations omitted).

**4.** The test for a unitary business is whether or not the operation of the portion of the business within the state is dependent upon or contributory to the operation of the business outside the state. *Joslin Dry Goods v. Dolan,* 200 Colo. 291, ——, 615 P.2d 16, 17–18 (1980) (en banc). *See Hans Rees Sons, Inc. v. North Carolina ex rel. Maxwell,* 283 U.S. 123, 133, 51 S.Ct. 385, 389, 75 L.Ed 879 (1931) ("the enterprise of a corporation which manufactures and sells its manufactured product is ordinarily a unitary business . . .").

ness); *W.R. Grace & Co. v. Commissioner of Revenue,* 378 Mass. 577, 583, 393 N.E.2d 330, 334 (1979) (construing similar legislative language, gain from taxpayer's sale of stock interests in other company can be taxed as business income because stock holdings were "integral component in [taxpayer's] total operation"); *Montana Department of Revenue v. American Smelting & Refining Co.,* 173 Mont. 316, 326, 567 P.2d 901, 907 (1977), *appeal dismissed,* 434 U.S. 1042, 98 S.Ct. 884, 54 L.Ed.2d 793 (1978) (under regulations exactly paralleling UDITPA's definition of business income, patent royalties and mine royalties were business income because they "derived from sources that are integral portions of [taxpayer's] business"); *Johns-Manville Products Corp. v. Commissioner of Revenue Administration,* 115 N.H. 428, 430–31, 343 A.2d 221, 222–23 (1975) (per curiam), *appeal dismissed,* 423 U.S. 1069, 96 S.Ct. 851, 47 L.Ed.2d 79 (1976) (sale of timberland taxable as business income where land was "held as a means of furthering the unitary business, was carried on the books as an asset, was purchased with income produced by the unitary business, the same officers controlled the business and the investment, and where the income and any gain was comingled [sic] with other income and used in the business").[5]

■ In this case, taxpayer's manufacturing plant furthers its business of furnishing and installing mechanical systems. Taxpayer treated the facility as part of its business, deducted from its District of Columbia income taxes the expenses it incurred in connection with maintaining the plant, D.C.Code § 47–1803.3(a)(1) (1981), and took depreciation deductions for wear and tear. *Id.,* § 47–1803.3(a)(7). Thus, the facility is an integral part of taxpayer's unitary business (see note 4 *supra*), and any gain from its disposition may be taxed (if properly apportioned) as business income.[6]

Accordingly, we reaffirm our holding in Part IV of our previous opinion that "the District of Columbia may not use a single, 'sales factor' in apportioning the business income of a company that conducts business both within and without the District. *See* D.C.Code [§ 47–1810.2 (1981)]; *General Motors [Corp. v. District of Columbia,* 380 U.S. 553, 85 S.Ct. 1156, 14 L.Ed.2d 68 (1965)]." *Pierce, supra,* 440 A.2d at 331. But we now further hold, with respect to the issue on appeal, that the insurance proceeds taxpayer received as compensation for flood damage to its Virginia plant are taxable as business income under 16 D.C. R.R. 309.5(a)(1), now codified as D.C.Code § 47–441 Art. IV(1)(a) (1982 Supp.).

We reverse the trial court's judgment awarding taxpayer a tax refund of $71,144.10 plus interest and remand for entry of a judgment awarding a refund, consistent with this opinion, based on proper apportionment of all business income.

*So ordered.*

---

**5.** *But see Western Natural Gas Co. v. McDonald,* 202 Kan. 98, 446 P.2d 781 (1968). In this case, the court considered the UDITPA definition of business income, identical to the District's definition, and—as in our first opinion in this case—held that business income is determined solely by looking to "the nature of the particular transaction giving rise to the income." *Id.* at 101, 446 P.2d at 783. The court held that a complete liquidation of all assets was not in the taxpayer's regular course of business.

**6.** The essence of taxable income is "the accrual of some gain, profit or benefit to the taxpayer." *Commissioner v. Wilcox,* 327 U.S. 404, 407, 66 S.Ct. 546, 548, 90 L.Ed. 752 (1946). Thus, the District may tax only that portion of the insurance proceeds which reflects taxpayer's gain, *i.e.,* that exceeds the plant's basis.